SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

 __New Jersey Division of Child Protection & Permanency v. A.P.__ (A-14-23) (088329)

Argued February 26, 2024 -- Decided July 31, 2024

PATTERSON, J., writing for a unanimous Court.

In this appeal, the Court considers whether the Division of Child Protection and Permanency (Division) met the requirements of N.J.S.A. 2C:52-19, an exception to New Jersey's expungement statute, and was therefore properly authorized to use the expunged records of A.P. (Arlo), who was the subject of a criminal investigation that arose from serious injuries sustained by his son D.P. (Daniel), at a Title 9 abuse and neglect factfinding trial with the same subject matter.

In March 2019, emergency personnel were dispatched to Arlo's home, where they encountered Arlo, his girlfriend, T.C. (Tiffany), and his two-year-old son, Daniel, who was unresponsive. Daniel was transported to a hospital, where he underwent emergency surgery. Arlo stated that Daniel had tripped over something in the kitchen, fallen on his face, and scraped his lip. Tiffany stated that the child did not appear to have sustained any other injuries but that she later found him with his eyes rolled back in his head and his body limp, prompting her to call 9-1-1.

A nurse at the hospital referred the matter to the Division, and the Division contacted the Monmouth County Prosecutor's Office. The Division learned that Daniel had sustained a skull fracture and subdural hemorrhage, both of which were inconsistent with the tripping and falling incident Arlo and Tiffany described. The Division conducted an emergency removal of Daniel from Arlo's custody and took custody of the child. The trial court upheld the Division's removal of Daniel.

Arlo was arrested and charged with endangering the welfare of a child. The Division filed a Title 9 action seeking custody, care, and supervision of Daniel. In January 2022, a grand jury declined to indict Arlo, and his criminal records were subsequently expunged. In the Title 9 proceeding, the Division filed a motion to use the records of Arlo's criminal proceedings pursuant to N.J.S.A. 2C:52-19. The trial court found "good cause and a compelling need to permit the release of records to the Division, the experts and the lawyers for all parties" in accordance with N.J.S.A. 2C:52-19. It noted that the Title 9 factfinding trial would be confidential, thus limiting the disclosure of expunged records.

1

The Appellate Division affirmed the trial court's determination. 475 N.J. Super. 472, 482-92 (App. Div. 2023). The Appellate Division construed N.J.S.A. 2C:52-19 to require a trial court to "consider[] on a case-by-case basis" the question whether there is "compelling need based on specific facts and good cause shown." Id. at 486. It found that standard to be met in this case. Ibid. The Court granted leave to appeal. 255 N.J. 426 (2023).

**HELD:** The Court concurs with the trial court and Appellate Division that the Division met the requirements of N.J.S.A. 2C:52-19 in this matter. The Division established good cause and compelling need based on specific facts for an order authorizing it to use Arlo's expunged records at the Title 9 abuse and neglect factfinding trial. It demonstrated that the subject matter of the criminal proceeding will also be the subject matter of the Title 9 trial. The trial court properly granted the Division's application, and the Court affirms the Appellate Division's judgment.

1. N.J.S.A. 2C:52-19 provides in part that "[i]nspection of [expunged] files and records, or release of the information contained therein, . . . may be permitted by the Superior Court upon motion for good cause shown and compelling need based on specific facts." The Legislature thus imposed on the movant the burden to make two distinct showings in order to review or use expunged records pursuant to that exception to the expungement statute: a showing of "good cause" and a showing of "compelling need based on specific facts." N.J.S.A. 2C:52-19. "Good cause" is a flexible standard. The requirement of "compelling need based on specific facts," however, denotes an elevated standard, requiring the movant to explain in detail why categories of documents or information that may be among the expunged records are needed in the pending case. When, as here, the movant has been given access to the expunged records, a trial court should expect that showing to be more detailed than a showing made in a typical setting in which the movant is unfamiliar with the records. Second, the Legislature strictly limited the use and dissemination of any expunged records subject to an order entered under N.J.S.A. 2C:52-19. Third, the Legislature further constrained the disclosure and use of expunged records and information by limiting a court's ability to grant leave to inspect expunged materials to settings in which "the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings." Ibid. The movant must thus provide the court with a description of the alleged conduct or incident that led to the arrest and/or conviction of the person whose records were expunged and also explain the nexus between that conduct or incident and the litigation or judicial proceedings in which the movant seeks to use the expunged records. If the movant shows good cause and compelling need based on specific facts and meets the statute's other requirements, the court may authorize the use of the expunged documents either to support an affirmative claim or to defend against a claim. Ibid. (pp. 14-20)

2

2.  Here, the Division established that the criminal and civil proceedings against Arlo concerned the same incident, and that the expunged records were created immediately after Daniel's injuries.  See A.P., 475 N.J. Super. at 486.  The Division also demonstrated that the law enforcement and child protection investigations were concurrent and intertwined.  The Division thus established a close nexus between its investigation of suspected child abuse and the Monmouth County Prosecutor's Office's arrest and prosecution of Arlo.  In addition, the Division demonstrated the importance of the expunged documents to this particular Title 9 proceeding, citing the underlying facts.  The only witnesses to Daniel's injuries were Arlo and Tiffany, both of whom stated that the child had a minor accident.  Daniel, by virtue of his age and medical condition, was incapable of recounting the incident.  Accordingly, expunged records in the prosecutor's file may provide crucial evidence that cannot be obtained from other sources.  Considered together, those factors comprise a showing of "good cause . . . and compelling need based on specific facts."  N.J.S.A. 2C:52-19.  N.J.S.A. 2C:52-19 also requires that "the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings."  That mandate is clearly satisfied here.  Finally, N.J.S.A. 2C:52-19 requires that the motion or any order granted pursuant to the motion "shall specify the person or persons to whom the records and information are to be shown and the purpose for which they are to be utilized."  Both the Division's motion and the order granting the motion specified that the expunged records would be used in the Title 9 factfinding trial, and the order noted that the proceedings were confidential.  The trial court properly granted the Division's motion to use Arlo's expunged records at the Title 9 factfinding trial.  The Court does not rule on the admissibility of any of the expunged records at trial; that determination is for the trial court on remand.  (pp. 20-24)

**AFFIRMED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES SOLOMON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PATTERSON's opinion.**

3

New Jersey Division of Child
Protection and Permanency,

Plaintiff-Respondent,

v.

A.P.,

Defendant-Appellant,

and

L.R., T.C., and J.P.,

Defendants.

In the Matter of D.P. and
T.R., minors.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
475 N.J. Super. 472 (App. Div. 2023).

| Argued | Decided |
|--------|---------|
| February 26, 2024 | July 31, 2024 |

John A. Albright, Assistant Deputy Public Defender,
argued the cause for appellant A.P. (Jennifer Sellitti,
Public Defender, Office of Parental Representation,
attorney; John A. Albright, of counsel and on the briefs).

1

Mary L. Harpster, Deputy Attorney General, argued the cause for respondent New Jersey Division of Child Protection and Permanency (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen and Sara M. Gregory, Assistant Attorneys General, of counsel, and Mary L. Harpster and Michelle McBrian, Deputy Attorney General, on the briefs).

Jennifer M. Sullivan, Assistant Deputy Public Defender, argued the cause for minor D.P. (Jennifer Sellitti, Public Defender, Office of the Law Guardian, attorney; M. Alexis Pollock, Deputy Public Defender, of counsel, and Jennifer M. Sullivan and Jacqueline Pham, Assistant Deputy Public Defender, of counsel and on the briefs).

Michael W. Sabo argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Fox Rothschild, and American Civil Liberties Union of New Jersey Foundation, attorneys; Jacob S. Perskie, of counsel and on the brief, and Michael W. Sabo, Jeffrey M. Pollock, and Eliana T. Baer, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

New Jersey's expungement statute, N.J.S.A. 2C:52-1 to -32, "is designed to eliminate 'the collateral consequences imposed upon otherwise law-abiding citizens who have had a minor brush with the criminal justice system.'" In re Kollman, 210 N.J. 557, 568 (2012) (quoting In re T.P.D., 314 N.J. Super. 643, 648 (Law Div. 1997), aff'd o.b., 314 N.J. Super. 535 (App. Div. 1998)).  As a general rule, when a court orders expungement of criminal records, those records must be "removed from the files of any government agency that is

2

given notice of the expungement petition" and "isolated and placed in the control of a designated person within that agency." G.D. v. Kenny, 205 N.J. 275, 296 (2011) (citing N.J.S.A. 2C:52-15; -1(a)). There are, however, "a number of exceptions to this general rule." Ibid.

In this appeal, we construe one such exception, N.J.S.A. 2C:52-19, which authorizes a Superior Court judge to allow inspection of expunged records or release of information contained in those records "upon motion for good cause shown and compelling need based on specific facts," but "only in those instances where the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings."

Petitioner A.P. (Arlo) was the subject of a criminal investigation that arose from serious injuries sustained by his son D.P. (Daniel).[1] Arlo was charged with endangering the welfare of a child, but a grand jury declined to indict him. The records of his arrest and prosecution were expunged.

Pursuant to N.J.S.A. 2C:52-19, the New Jersey Division of Child Protection and Permanency (Division) moved before a Family Part judge to use the expunged records in an abuse and neglect factfinding trial against Arlo based on the incident in which Daniel was injured. The trial court granted the

---

[1] We refer to the individuals involved in this appeal by the pseudonyms used by the Appellate Division in its opinion. See DCPP v. A.P., 475 N.J. Super. 472, 477 n.1 (App. Div. 2023).

3

application, and the Appellate Division affirmed the trial court's determination.  DCPP v. A.P., 475 N.J. Super. 472, 484-92 (App. Div. 2023).  We granted leave to appeal.

We concur with the trial court and Appellate Division that the Division met the requirements of N.J.S.A. 2C:52-19 in this matter.  The Division established good cause and compelling need based on specific facts for an order authorizing it to use Arlo's expunged records at the Title 9 abuse and neglect factfinding trial.  It demonstrated that the subject matter of the criminal proceeding will also be the subject matter of the Title 9 trial.  The trial court properly granted the Division's application.  Accordingly, we affirm the Appellate Division's judgment.

## I.

### A.

On March 30, 2019, Borough of Keansburg emergency personnel were dispatched to Arlo's home in response to a 9-1-1 call.  They encountered Arlo, his girlfriend, T.C. (Tiffany), and his two-year-old son, Daniel, who was unresponsive.  Emergency personnel transported Daniel to a hospital, where doctors performed cardiopulmonary resuscitation and placed him on a ventilator.  The child underwent emergency surgery.

4

Arlo and Tiffany spoke to medical personnel at the hospital. Arlo stated that he and his family had moved to a new home that day and that Daniel had tripped over something in the kitchen, fallen on his face, and scraped his lip. Tiffany stated that the child did not appear to have sustained any other injuries and that she put him to bed at 8:00 p.m. Tiffany said that when she later checked on him, his eyes had rolled back in his head and his body was limp, prompting her to call 9-1-1.

A nurse at the hospital referred the matter to the Division, and the Division contacted the Monmouth County Prosecutor's Office. A detective at the Prosecutor's Office advised the Division that law enforcement would begin its investigation the next day and that the Division was free in the meantime to conduct interviews immediately if it chose to do so.

Division caseworkers interviewed Arlo, Tiffany, and Daniel's mother, who did not have custody of Daniel and was not in Arlo's home when the child was injured. Tiffany reiterated, and Arlo stated, that Daniel tripped and fell on an object.

The Division learned that Daniel had sustained an abrasion to his lip and a parietal area skull fracture and subdural hemorrhage. The surgeon who operated on Daniel reported a serious injury to the child's skull caused by forceful impact and stated that a full skeletal examination would be conducted

5

to assess the damage caused by the injury. Another physician opined that Daniel's injuries were inconsistent with the tripping and falling incident Arlo and Tiffany described. One medical report stated that Daniel had sustained "massive ischemia to the almost entire right cerebral hemisphere into the occipital lobe, also involving the right basal ganglia and also extending to the left frontal area of the brain," an injury the doctor viewed to be possible only "by a choking, strangulation, or some dramatic torsion of the neck," not due "to tripping on the steps." The report further provided that "[w]ith no other history, this has to be high concern for significant non accidental trauma of two types -- one to [cause] the ischemia and one to cause the fracture and subdural bleeding."

The Division conducted an emergency removal of Daniel from Arlo's custody pursuant to the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82, and took custody of the child. The trial court upheld the Division's removal of Daniel. Following his discharge from the hospital, Daniel was placed in a resource home.

B.

1.

Arlo was arrested and charged with second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2).

6

The Division filed a verified complaint seeking custody, care, and supervision of Daniel, based in part on N.J.S.A. 9:6-8.21 (the Title 9 action).[2]

On or about January 24, 2022, a grand jury declined to indict Arlo, and the criminal proceedings against him concluded. Three days later, the trial judge assigned to the Title 9 action adjourned the trial, previously set for February 23, 2022, until May 9, 2022. The trial court explained that it adjourned the trial so that counsel for the Division would have the opportunity to review and distribute to all parties the "voluminous discovery" that the Division had received from the prosecutor in Arlo's criminal matter. It is undisputed that counsel for the Division received the prosecutor's records at issue in this appeal and distributed those records to all parties in this matter.

In a March 24, 2022 order, a Criminal Part judge expunged Arlo's criminal records pursuant to N.J.S.A. 2C:52-6(a), a provision of the expungement statute that applies when "proceedings against the person were dismissed, the person was acquitted, or the person was discharged without a conviction or finding of guilt." The expungement order directed various law enforcement agencies, including the Monmouth County Prosecutor's Office and the Keansburg Police Department, to "remove all records concerning the

---

[2] The Division's Title 9 action was later expanded to address the custody of other children in the family; those children are not at issue in this appeal.

subsequent criminal and/or juvenile proceedings regarding [Arlo's] arrest(s), charge(s), dismissal(s), or disposition(s), if applicable, and place such information in the control of a person within the office designated to retain control over expunged records." The expungement order further directed, among other provisions, that "any records, or the information therein, shall not be released except as provided" by the expungement statute, and "that the persons designated to retain control over expunged records take sufficient precautions" to ensure that the records and information "are not released."

At a hearing before the trial court in the Title 9 action, counsel for the Division advised the court that it was ready to proceed with the factfinding trial on the scheduled trial date. She advised the court, however, that a detective from the Keansburg Police Department, citing the expungement order, had declined to provide trial testimony about Arlo's criminal proceeding in response to a subpoena.

The Division filed a motion to vacate the expungement order. Arlo's counsel objected, stating that any motion to vacate the expungement order should be filed in the Criminal Part, not the Family Part. After conferring with the Prosecutor's Office, counsel for the Division reported to the trial court that the criminal matter was closed, and that the Prosecutor's Office had advised

8

her that the motion to vacate the Criminal Part's expungement order should be handled by the Family Part.

The trial court denied the motion to vacate the expungement order but ordered the parties to address the question whether records of Arlo's criminal proceedings could nonetheless be used in the Title 9 factfinding trial in accordance with N.J.S.A. 2C:52-19.

The Division then moved for an order allowing the "expunged records relating to the incident involving the arrest of [Arlo]" to be "released for good cause shown and compelling need" in accordance with N.J.S.A. 2C:52-19, "for use in [the Division's] civil proceeding against [Arlo] pursuant to N.J.S.A. 2C:52-19."

The trial court granted the Division's motion. The court reasoned that the prosecutor's records in a child abuse and neglect case are inherently part of the Division's record, "given the correlated nature of the investigations." It concluded that the Division and law enforcement maintain a collaborative relationship to protect children and have reciprocal duties to report suspected child abuse to one another. The trial court found that an order prohibiting the Division from using the prosecutor's records would "hamstring [it] from proceeding" with an abuse and neglect action if a grand jury declines to indict an individual suspected of child abuse.

9

The trial court found "good cause and a compelling need to permit the release of records to the Division, the experts and the lawyers for all parties" in accordance with N.J.S.A. 2C:52-19. It noted that the Title 9 factfinding trial would be confidential, thus limiting the disclosure of expunged records. The court stayed its judgment pending Arlo's appeal.

2.

Arlo filed a motion for leave to appeal the trial court's order, contending that expunged records cannot be used for any purpose, that N.J.S.A. 2C:52-19 is irrelevant to this case, and that the Division's motion should have been filed before the Criminal Part judge who had entered the expungement order rather than the Family Part judge handling the Title 9 matter. The Appellate Division granted leave to appeal and stayed the scheduled trial.

The Appellate Division affirmed the trial court's determination. A.P., 475 N.J. Super. at 482-92. The appellate court held that both the Criminal Part and the Family Part have jurisdiction under N.J.S.A. 2C:52-19, and that the Family Part is "in a much better position to hear the Division's N.J.S.A. 2C:52-19 motion than the Criminal Part," given the specialized expertise of Family Part judges. Id. at 491-92. The Appellate Division rejected Arlo's argument that the expungement statute barred the use of expunged records for any purpose, noting that such records may be disclosed and used in certain

10

circumstances under N.J.S.A. 2C:52-19 and other exceptions addressing specific settings.  Id. at 482-83.

The Appellate Division construed N.J.S.A. 2C:52-19 to require a trial court to "consider[] on a case-by-case basis" the question whether there is "compelling need based on specific facts and good cause shown."  Id. at 486. It found that standard to be met in this case, given that the criminal and civil proceedings concerned the same incident, that the expunged records were created by the prosecutor's office immediately following that incident, and that Daniel's extreme youth and severe injuries prevented him from telling authorities what happened to him.  Ibid.

3.

We granted Arlo's motion for leave to appeal.  255 N.J. 426 (2023).  We also granted amicus curiae status to the American Civil Liberties Union of New Jersey (ACLU).

II.

A.

Arlo argues that the Appellate Division improperly held that his expunged records should be available to the parties for use in a Title 9 abuse and neglect proceeding.  He contends that prior Appellate Division case law applying N.J.S.A. 2C:52-19 allowed expunged records to be used by a third

11

party only in defense of a claim asserted by a person whose records were expunged, not in support of an affirmative claim against that person. Arlo asserts that the appellate court created a new and expansive category of exceptions to expungement under N.J.S.A. 2C:52-19, thus undermining the expungement statute's objective of eliminating the collateral consequences of a minor encounter with the criminal justice system.

## B.

The Division notes that its personnel and law enforcement officials jointly investigate alleged child abuse and neglect under strict protocols in order to protect children and prevent further abuse. It contends that the Appellate Division properly construed N.J.S.A. 2C:52-19 to apply the same standard of good cause and compelling need based on specific facts, regardless of the identity of the party that seeks to use the expunged records. The Division contends that the statutory standard is satisfied here.

## C.

The Law Guardian, representing Daniel, concurs with the Division that the Appellate Division properly construed N.J.S.A. 2C:52-19 and that there was a showing of good cause and compelling need based on specific facts for the expunged records in this matter.

12

D.

Amicus curiae ACLU urges that we adopt a heightened standard requiring that a party seeking to use expunged records show a particularized need that outweighs the privacy and confidentiality interests of the person whose records were expunged, and it identifies several factors for courts to apply in that determination.

III.

A.

We review de novo the Appellate Division's interpretation of N.J.S.A. 2C:52-19, which is a legal determination.[3] In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 273-74 (2017).

When we construe a statute, we strive "to effectuate the Legislature's intent." W.S. v. Hildreth, 252 N.J. 506, 518 (2023). The best indicator of that intent is the statute's language. DiProspero v. Penn, 183 N.J. 477, 492 (2005). "We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citations omitted). If the statute's plain terms

[3] In his brief to this Court in support of his motion for leave to appeal, Arlo did not contest the Appellate Division's holding that both the Family Part and the Criminal Part have jurisdiction to decide an application under N.J.S.A. 2C:52-19. See A.P., 475 N.J. Super. at 491-92. Accordingly, we do not address the jurisdictional issue.

13

are "clear and unambiguous, we apply the law as written." Hildreth, 252 N.J. at 518.

## B.

The Legislature identified "relief to the reformed offender who has led a life of rectitude and disassociated himself with unlawful activity" as the expungement statute's primary goal. N.J.S.A. 2C:52-32. The relief afforded "by the expungement statute, however, does not include the wholesale rewriting of history." G.D., 205 N.J. at 294-95. When a court enters an order of expungement, "criminal records are extracted and isolated, but not destroyed." Kollman, 210 N.J. at 568 (citing N.J.S.A. 2C:52-1(a)).

N.J.S.A. 2C:52-19 prescribes an exception to the expungement of criminal files and records, including those expunged pursuant to N.J.S.A. 2C:52-6(a), the provision under which Arlo's criminal records were expunged. It provides that

> [i]nspection of the files and records, or release of the information contained therein, which are the subject of an order of expungement, or sealing under prior law, may be permitted by the Superior Court upon motion for good cause shown and compelling need based on specific facts. The motion or any order granted pursuant thereto shall specify the person or persons to whom the records and information are to be shown and the purpose for which they are to be utilized. Leave to inspect shall be granted by the court only in those instances where the subject matter of the records of arrest or conviction is the object of litigation or judicial

14

proceedings. Such records may not be inspected or utilized in any subsequent civil or criminal proceeding for the purposes of impeachment or otherwise but may be used for purposes of sentencing on a subsequent offense after guilt has been established.

[N.J.S.A. 2C:52-19.][4]

As this Court has explained, N.J.S.A. 2C:52-19 "permits the inspection of expunged records if the Superior Court finds 'good cause shown and compelling need based on specific facts,' and 'only in those instances where the subject matter of the records of arrest or conviction is the object of

---

[4] In addition to N.J.S.A. 2C:52-19, the Legislature prescribed other exceptions to the expungement statute's restrictions on the use and disclosure of expunged records and information. See, e.g., N.J.S.A. 2C:52-18 (exception for certain uses of expunged records by the Violent Crimes Compensation Office); id. at -20 (exception for certain uses of expunged records in conjunction with supervisory treatment or diversion programs); id. at -21 (exception for certain uses of expunged records in conjunction with setting bail, authorizing pretrial release, preparing a presentence report, or sentencing); id. at -22 (exception for certain uses of expunged records by the Parole Board); id. at -23 (exception for certain uses of expunged records by the Department of Corrections); id. at -23.1 (exception for certain uses of expunged or sealed records "to facilitate the State Treasurer's collection of any court-ordered financial assessments that remain due at the time of an expungement or sealing of records granted by a court"); id. at -27(a) (exception for disclosure of the "fact of an expungement, sealing, or similar relief" under N.J.S.A. 2C:52-8(b)); id. at -27(b) (exception for disclosure of the "fact of an expungement of prior charges" dismissed in certain settings involving supervisory treatment or other diversion programs); id. at -27(c) (exception for "information divulged on expunged records," which "shall be revealed by a petitioner seeking employment within the judicial branch or with a law enforcement or corrections agency," and which "shall continue to provide a disability as otherwise provided by law"). No party contends that any of these additional exceptions apply to this appeal.

15

litigation or judicial proceedings.'" G.D., 205 N.J. at 296 (quoting N.J.S.A 2C:52-19).

We derive from the plain language of N.J.S.A. 2C:52-19 evidence of the Legislature's intent when it prescribed that exception to expungement.

First, the Legislature imposed on the movant the burden to make two distinct showings in order to review or use expunged records: a showing of "good cause" and a showing of "compelling need based on specific facts." N.J.S.A. 2C:52-19.

The familiar standard of "good cause" does not have a precise definition governing every setting; rather, "[i]ts application requires the exercise of sound discretion in light of the facts and circumstances of the particular case considered in the context of the purposes of the [statute or rule] being applied." See Ghandi v. Cespedes, 390 N.J. Super. 193, 196 (App. Div. 2007) (applying the "good cause" standard prescribed in Rule 1:13-7(a)) (quoting Del. Valley Wholesale Florist, Inc. v. Addalia, 349 N.J. Super. 228, 232 (App. Div. 2002)); see also D.W. v. R.W., 212 N.J. 232, 251 (2012) ("What constitutes good cause obviously will vary with the unique circumstances of each particular case, but guideposts are needed to direct the way for our trial courts."). When the Legislature made "good cause" part of N.J.S.A. 2C:52-

16

19's required showing, it imposed a flexible standard -- not a stringent test -- on the party seeking to use expunged records.

The statutory requirement of "compelling need based on specific facts," however, denotes an elevated standard; it requires more than the fundamental benchmark of good cause. See N.J.S.A. 2C:52-19.[5] When the Legislature implemented that standard, it clearly intended that the movant present more than a conclusory assertion that the expunged criminal records could be relevant to the matter currently in litigation. By its plain terms, the statute requires the movant to explain in detail why categories of documents or information that may be among the expunged records are needed in the pending case. When, as here, the movant has been given access to the expunged records, a trial court should expect that showing to be more detailed than a showing made in a typical setting in which the movant is unfamiliar with the records.

---

[5] We do not adopt the heightened standard advocated by amicus curiae ACLU. That standard would require the movant to show a "particularized need" outweighing the confidentiality and privacy interests of the person whose records were expunged, taking into account (1) the extent to which the information may be available to the Division from other sources; (2) whether there is a closely tailored nexus between the expunged records and a specific need for such records; and (3) possible prejudice to the party's investigation or litigant's case if the expunged records are not available. The ACLU's proposed test would impose a burden on the movant that is simply not supported by N.J.S.A. 2C:52-19's plain language.

Second, the Legislature strictly limited the use and dissemination of any expunged records subject to an order entered under N.J.S.A. 2C:52-19. It required that the movant "specify the person or persons to whom the records and information are to be shown and the purpose for which they are to be utilized," thus authorizing the court to limit the scope of that disclosure or use. N.J.S.A. 2C:52-19. The Legislature also prohibited the inspection or utilization of such records "in any subsequent civil or criminal proceeding for the purposes of impeachment or otherwise," with the exception of their use "for purposes of sentencing on a subsequent offense after guilt has been established." Ibid.[6]

Those restrictions plainly reflect the Legislature's concern about unfettered disclosure of expunged records; the records are to be used only in the action that is the subject of the application, under conditions imposed by the trial court overseeing the proceeding. Ibid.

---

[6] Like the Appellate Division panel that decided this appeal, we reject Arlo's contention that the "subsequent civil or criminal proceeding" to which N.J.S.A. 2C:52-19 refers is the same "litigation or judicial proceedings" for which the movant seeks to use the expunged records. See A.P., 475 N.J. Super. at 487-88. N.J.S.A. 2C:52-19's final sentence clearly addresses a future proceeding distinct from the pending proceeding for which the movant seeks the expunged records. To the extent that the Appellate Division suggested in Y.H. v. T.C., 475 N.J. Super. 107, 120 (App. Div. 2023), that the "subsequent civil or criminal proceeding" portion of the statute bars a party from using expunged records against a person whose records were expunged, we disagree.

18

Third, the Legislature further constrained the disclosure and use of expunged records and information by limiting a court's ability to grant leave to inspect expunged materials to settings in which "the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings." Ibid. The movant must thus provide the court with a description of the alleged conduct or incident that led to the arrest and/or conviction of the person whose records were expunged and also explain the nexus between that conduct or incident and the litigation or judicial proceedings in which the movant seeks to use the expunged records.

We discern no evidence, however, supporting Arlo's argument that the Legislature intended to further limit N.J.S.A. 2C:52-19 to settings in which the person whose records were expunged is the party who institutes a legal action rather than a defendant in such an action. No such distinction is expressed or implied in the statutory language. See ibid. Although this Court's opinion in G.D., 205 N.J. at 294-313, and the Appellate Division's opinion in State v. J.R.S., 398 N.J. Super. 1, 6 (App. Div. 2008), addressed circumstances in which parties sought to use expunged records to defend against claims by individuals whose records were expunged, nothing in those opinions limited N.J.S.A. 2C:52-19 to those specific settings. If the movant shows good cause and compelling need based on specific facts and meets the statute's other

19

requirements, the court may authorize the use of the expunged documents either to support an affirmative claim or to defend against a claim. Ibid.

In sum, the Legislature prescribed an exception to the expungement statute authorizing the disclosure and use of expunged records and information upon a showing of good cause and compelling need based on specific facts, limited to settings in which "the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings." Ibid. Consistent with the expungement statute's restorative goals, the Legislature required the movant to identify any person to whom the records and information will be shown and the purpose for which they will be utilized, envisioned that the court will carefully monitor the use of expunged material in the "litigation or judicial proceedings," and strictly limited the use of such records and information in any "subsequent civil or criminal proceeding." Ibid.

C.

Applying N.J.S.A. 2C:52-19's plain language, we review the trial court's grant of the Division's motion seeking access to expunged records relating to the incident that prompted Arlo's arrest.

We first consider whether the Division established good cause and compelling need based on specific facts under N.J.S.A. 2C:52-19 for an order

20

allowing it to inspect and use documents in the prosecutor's file regarding the events that led to Arlo's arrest.

The Division presented to the trial court detailed evidence of the protocols that require the Division and law enforcement to closely cooperate in child abuse investigations, and it explained the importance of a joint child-protection and criminal-justice investigation of suspected child abuse. It argued that the compelling public policy in favor of the protection of children warranted access to the prosecutor's file in preparation for the Title 9 factfinding proceeding.

However, the Division did not contend that expunged criminal records may be disclosed and used in any Title 9 proceeding arising from suspected child abuse. To the contrary, to justify access to Arlo's expunged records, the Division presented the case-specific facts that N.J.S.A. 2C:52-19 mandates.

As the Appellate Division observed, the Division established that the criminal and civil proceedings against Arlo concerned the same incident, and that the expunged records were created immediately after Daniel's injuries. See A.P., 475 N.J. Super. at 486. The Division also demonstrated that the law enforcement and child protection investigations were concurrent and intertwined. The Division thus established a close nexus between its

21

investigation of suspected child abuse and the Monmouth County Prosecutor's Office's arrest and prosecution of Arlo.

In addition, the Division demonstrated the importance of the expunged documents to this particular Title 9 proceeding, citing the underlying facts. The only witnesses to Daniel's injuries were Arlo and Tiffany, both of whom stated that the child had a minor accident, tripping on an item left on the floor of his home. Daniel, then only two years old, sustained a serious head injury. Ibid. By virtue of his age and medical condition, Daniel was incapable of recounting the incident to investigators in its immediate aftermath, and there is no indication that he has any recollection of that incident today. Accordingly, expunged records in the prosecutor's file may provide crucial evidence that cannot be obtained from other sources. Considered together, those factors comprise a showing of "good cause . . . and compelling need based on specific facts." N.J.S.A. 2C:52-19.

We concur with the Appellate Division that it might not be possible for the Division to make the required showing in a different set of circumstances, such as a setting involving an older child who has not sustained a head injury, recalls the incident, and is capable of testifying at a Title 9 factfinding trial. A.P., 475 N.J. Super. at 486. The application of N.J.S.A. 2C:52-19's "good

22

cause shown and compelling need based on specific facts" standard thus turns on the circumstances of this matter.

N.J.S.A. 2C:52-19 also requires that "the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings." That mandate is clearly satisfied here. The record reflects that Arlo's prosecution arose from the injuries sustained by Daniel on March 30, 2019, and that those injuries are the basis for the Title 9 proceeding at issue.

Finally, N.J.S.A. 2C:52-19 requires that the motion or any order granted pursuant to the motion "shall specify the person or persons to whom the records and information are to be shown and the purpose for which they are to be utilized." Both the Division's motion and the trial court's order granting the motion specified that the expunged records would be used in the Title 9 factfinding trial, and the order noted that the proceedings were confidential. Although the record does not specifically identify the persons to whom the expunged records have been disclosed, it indicates that before the Division's motion was filed, its counsel distributed the expunged records received from the Prosecutor's Office to all counsel of record.[7]

---

[7] The record indicates that the trial court authorized the release of the expunged records to the Division, counsel for the parties and experts for the parties, but there is no indication that the individuals to whom those records have been or will be disclosed have been specifically identified, as N.J.S.A.

23

Accordingly, we agree with the Appellate Division that the trial court properly granted the Division's motion to use Arlo's expunged records at the Title 9 factfinding trial. We do not rule on the admissibility of any of the expunged records at trial; that determination is for the trial court on remand.

## IV.

The judgment of the Appellate Division is affirmed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.

CHIEF JUSTICE RABNER and JUSTICES SOLOMON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PATTERSON's opinion.

---

2C:52-19 requires. On remand, the trial court should enter an order (1) identifying all persons to whom the records have been disclosed in pretrial proceedings; (2) identifying all persons to whom such records will be disclosed in connection with the trial; and (3) addressing any further disclosures of the expunged records and any confidentiality protections that apply to them. See N.J.S.A. 2C:52-19.